IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02029-PAB

LEROY BUHL,

    Applicant,

v.

D. BERKEBILE, Warden,

    Respondent.

---

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] ("the Application") filed *pro se* by Applicant Leroy Buhl. The Application included a Memorandum in Support of Habeas Corpus Relief [Docket No. 1 at 4-5]. On August 18, 2014, Respondent was ordered to show cause why the Application should not be granted. Respondent has filed a Response to Order to Show Cause ("the Response") [Docket No. No. 17], and Mr. Buhl has filed a Reply (which he titled an "Answer") to Response to Order to Show Cause ("the Reply") [Docket No. 22]. After reviewing the pertinent portions of the record in this case, including the Application, the Response, and the Reply, the Court concludes that the Application should be denied.

**I. RELEVANT FACTUAL AND PROCEDURAL HISTORY**

Mr. Buhl is a prisoner in the custody of the United States Bureau of Prisons ("BOP") at the United States Penitentiary, Administrative Maximum, in Florence,

Colorado. Mr. Buhl filed this action challenging the validity of a prison disciplinary conviction. According to Mr. Buhl, he was attacked by two inmates with knives on May 18, 2012, and, during the course of the attack, he managed to disarm one of the inmates and chase the other inmate away. Mr. Buhl did not receive a copy of the incident report within the ordinary 24-hour time frame due to FBI referral. The FBI declined prosecution on June 1, 2012, and Mr. Buhl was issued a copy of the incident report that same day. The report charged him with possession of a weapon based on his possession of the knife he took from one of the assailants. Mr. Buhl asserts that he gave the knife to prison authorities immediately after the attack ended.

On July 9, 2012, Mr. Buhl appeared before a discipline hearing officer ("DHO") who postponed the proceedings pending appointment of a staff representative. Following a DHO hearing on July 18, 2012, Mr. Buhl was convicted of the disciplinary offense and was sanctioned with disciplinary segregation and the loss of telephone and commissary privileges for sixty days. The disciplinary sanctions did not include a loss of good time credits. Mr. Buhl asserted that he was not allowed to appear at the July 18 hearing and that he did not receive a copy of the written report from the DHO following the hearing.

On November 9, 2012, Mr. Buhl filed an action in this court seeking relief in *Buhl v. Berkebile*, Civil Action No. 12-cv-02953-WYD.[1] Mr. Buhl received a copy of the DHO report on February 8, 2013 [Docket No. 17-1 at 16]. On February 14, 2013, he filed an

---

[1] This Court may take judicial notice of its own records and files that are part of the Court's public records. *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979).

administrative appeal of the disciplinary conviction.  On April 17, 2013, the BOP Regional Director remanded the disciplinary matter to the DHO for reconsideration because of an unspecified procedural error [Docket No. 17-1 at 31].

On September 24, 2013, this Court denied Mr. Buhl's pending application for federal habeas corpus relief in case number 12-cv-02953-WYD.  Mr. Buhl filed a timely appeal to the Court of Appeals for the Tenth Circuit.

A different DHO conducted a rehearing on the incident report on December 9, 2013.  Applicant received a notice of the DHO hearing and a written notice of his rights on October 10, 2013 [Docket No. No. 17-1 at 34], and he requested and was appointed a staff representative.  Three witnesses made statements that were considered during the December 9, 2013 rehearing.  Although Applicant refused to appear at the rehearing, the DHO considered his written statement.  At the conclusion of the rehearing, the DHO upheld the finding that Applicant committed the prohibited act of possession of a weapon, as charged.  The DHO sustained the sanctions previously imposed, which Applicant already had served [Docket No. 17-1 at 39].  As support for his findings and conclusion, the DHO relied on the incident report, photographs, memoranda from BOP staff, a video of the incident, Applicant's written statements, and the statements of witnesses [Docket No. 17-1 at 37-38].  Applicant received a copy of the DHO's report on January 2, 2014 and was notified of his right to appeal through the Administrative Remedy Program.

On May 21, 2014, the Court of Appeals for the Tenth Circuit dismissed Applicant's appeal in case number 12-cv-02953-WYD as moot after the DHO issued a new report following the rehearing on December 9, 2013.  The court further stated that

Mr. Buhl could file a new application for habeas relief after he had exhausted the available administrative remedies as to the new disciplinary order.

On July 22, 2014, Mr. Buhl filed the instant action by filing an Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1]. His sole claim is that his constitutional right to due process was violated because the incident report he received on June 1, 2012 was issued more than two weeks after the alleged incident in violation of BOP regulations.

## II. STANDARD OF REVIEW

The Court must construe the Application and the Reply liberally because Mr. Buhl is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief is warranted only if Mr. Buhl "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III. DISCUSSION

As noted above, Mr. Buhl claims that he was denied due process because the incident report he received on June 1, 2012 was issued more than two weeks after the alleged incident in violation of BOP regulations set forth in 28 C.F.R. Part 541. In this regard, 28 C.F.R. § 541.5(a) provides as follows.

> a) Incident report. The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

As explained to Applicant in his earlier proceeding in this Court, he has failed to show that he is entitled to habeas corpus relief.

### A. Availability of Habeas Corpus Relief

The purpose of the writ of habeas corpus is to test the legality of a prisoner's detention. *Heck v. Humphrey*, 512 U.S. 477 (1994); *Allen v. McCurray*, 449 U.S. 90, 101 (1980) (the unique purpose of habeas corpus is to release the petitioner from unlawful confinement); *Wolff v. McDonnell*, 418 U.S. 539 (1974) (basic purpose of the writ is to enable those unlawfully incarcerated to obtain their freedom). The remedy is to free an inmate from unlawful custody. *Preiser v. Rodriguez*, 411 U.S. 475 (1973). If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy. *Preiser*, 411 U.S. at 499. *See also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasizing that inmates should "use only habeas corpus . . . remedies when they seek to invalidate the duration of their confinement – either directly through an

injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [sovereign's] custody") (emphasis in original).

A request by a federal prisoner for a change in the place of confinement is properly construed as a challenge to the conditions of confinement and, thus, must be brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006). Here, as explained more fully below, Applicant's due process claim does not affect the fact or duration of his custody. In other words, success on his due process challenge (and the expungement of the incident report) would not entitle him to speedier release from prison. Applicant must seek this remedy, if at all, in a civil rights action for injunctive relief against government officials. *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231-32, 1236 (10th Cir. 2005) (holding that a federal prisoner may bring a civil action related to his conditions of confinement and seeking injunctive relief against federal officials). Because the Court lacks jurisdiction under 28 U.S.C. § 2241, the Court must deny the application.

### B.  Due Process

Moreover, Mr. Buhl is not entitled to any relief, regardless of the type of proceeding before the Court, because he has failed to show any violation of his due process rights.

The 5th Amendment protects federal prisoners against the deprivation of liberty or property without due process of law. To sufficiently plead a due process claim, Mr.

Buhl must allege facts showing: 1) that he was deprived of a liberty or property interest; and 2) that the procedures required prior to such a deprivation were not properly observed. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("those who seek to invoke [the due process clause's] procedural protection must establish that one of these interests is at stake"). Mr. Buhl does not allege that he was deprived of property as a result of his disciplinary conviction, and thus, the question is whether he was deprived of any liberty interest.

Liberty interests arise either from the Constitution itself, by reason of guarantees implicit in the word liberty or they "may arise from an expectation or interest created by laws or policies." *Wilkinson*, 545 U.S. at 221. Courts have been reluctant to derive liberty interests wholesale from the Constitution, noting that the fact of an inmate's conviction gives rise to a range of custody options that the state might lawfully impose. *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Courts formerly recognized liberty interests in conditions of prison confinement created by mandatory language set forth in state or federal policies or regulations, but that approach was abandoned by the Supreme Court in *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). The current standard requires an inmate claiming a liberty interest in conditions of confinement to show that the challenged conditions "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*; *Wilkinson*, 545 U.S. at 222-23 ("the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life"). In short, to show that his disciplinary

conviction resulted in the deprivation of a liberty interest, Mr. Buhl must plead facts showing that the punishments imposed for that conviction created conditions of confinement that are "atypical and significant hardships" compared to ordinary prison life.  He has not done so.

Mr. Buhl's disciplinary conviction resulted in disciplinary segregation for sixty days, loss of phone and commissary for sixty days, and in his not being able to transfer out of administrative security segregation as quickly due to the infraction now on his record.  None of these punishments imposes "atypical and significant" hardships.  *See e.g., Muhammad v. Hood*, 100 F. App'x 782, 783 (10th Cir. 2004) (expulsion of inmate from ADX step-down program does not give rise to liberty interest); *Muhammad v. Finley*, 74 F. App'x 847, 849 (10th Cir. 2003) (disciplinary segregation and loss of commissary privileges does not give rise to liberty interest); *Moore v. Pernberton*, 110 F.3d 22, 23 (7th Cir. 1997) (holding that loss of commissary privileges does not amount to loss of liberty or property sufficient to trigger due process protections).  Accordingly, Mr. Buhl has failed to state a cognizable due process claim based on his disciplinary conviction.

Moreover, Mr. Buhl fails to show a liberty interest due to BOP's alleged failure to have complied with 28 C.F.R. § 541.5(a).  In pertinent part, this regulation provides: "You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident."  Inclusion of 'ordinarily' as a modifier for 'provided within 24 hours' provides flexibility that is often important in the prison context where investigation of suspicious activity may be required to define the scope of the activity and to identify all participants.  There is no U.S. Supreme Court or Tenth Circuit

decision holding that the word "ordinarily" in a statute or regulation can be read as establishing a mandatory requirement. Indeed, the Tenth Circuit has held the opposite:

> Mendoza also contends he was denied due process because the BOP failed to abide by its own time limits. Specifically, he claims prison officials were required to provide notice of his violation within 24 hours of discovering it. See 28 C.F.R. § 541.5(a). This claim, however, does not withstand a plain reading of the regulation. Section 541.5(a) is advisory, providing that written charges "ordinarily" should be given within a day, and the flexible language may very well have been designed to accommodate a situation like this, where the BOP had a strong suspicion of a violation but wanted confirmation from a lab and the inmate's medical records before filing an official charge.

*Mendoza v. Tamez*, 451 F. App'x 715, 717 (10th Cir. 2011) (unpublished). This is consistent with every other circuit court that has addressed this issue. *See, e.g.*, *Valdez v. Adler*, 518 F. App'x 563, 564 (9th Cir. 2013); *Wallace v. Federal Detention Center*, 528 F. App'x 160 (3d Cir. 2013)*; Saenz-Lopez v. BOP*, 221 F.3d 1339 (7th Cir. 2000). Thus, Mr. Buhl has failed to show that BOP failed to follow 28 C.F.R. § 541.5(a).

Even if 28 C.F.R. § 541.5(a) did impose an unconditional obligation on prisons to provide an incident report to a prisoner within 24 hours of staff becoming aware of that prisoner's alleged involvement, it would be of no avail to Mr. Buhl because the Supreme Court and the Tenth Circuit never have held that constitutional due process requires prisons to provide the procedures and timelines set forth in this regulation.

In this regard, federal and state regulations in and of themselves do not create a liberty interest in that procedure. *See, e.g.*, *Hewitt v. Helms*, 459 U.S. at 471 (mere fact of careful procedural structure to regulate use of administrative segregation does not indicate existence of protected liberty interest); *McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir. 1995) (mere procedures do not create any substantive liberty interest, even

when phrased in mandatory language); *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 515 (10th Cir. 1998) (holding that the "mere existence of a state regulatory scheme, however, does not mean the state has forged a liberty interest."); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) (the adoption of mere procedural guidelines does not give rise to a liberty interest), *cert. denied*, 485 U.S. 990 (1988). Thus, violations of statutes, rules or regulations that require certain procedures which are not compelled by the Federal Constitution do not make out a constitutional claim. To put it another way, BOP regulations can provide more protection than the Constitution requires, but the regulations do not raise the standard of constitutional due process. Consequently, failure to follow BOP regulations does not, in and of itself, result in a violation of due process.

The BOP regulations set forth in 28 C.F.R. Part 541 were promulgated in part to satisfy the requirements set forth in *Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974), where the Supreme Court held that prisoners had a liberty interest in receiving good time credits that could not be deprived in a prison disciplinary proceeding without procedural due process protections. Notwithstanding, the Court held that prison disciplinary proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. If a protected liberty interest is implicated, procedural due process requires that a prison inmate facing disciplinary charges be provided: 1) the right to appear before an impartial decision-making body; 2) twenty-four hour advance written notice of the charges; 3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional security or correctional

goals; 4) assistance from an inmate representative, if the charged inmate is illiterate or if the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case; and 5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id*. at 563-71. In addition, procedural due process requires that "the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (internal citation and quotation marks omitted).

Even when faced with a protected liberty interest, courts have concluded that BOP's failure to present an inmate with charges within 24 hours of the conduct does not violate an inmate's due process rights. *See, e.g., Wallace v. Federal Detention Center,* 528 F. App'x 160 (3d Cir. 2013) (holding that two month delay did not violate due process because *Wolff* did not require issuance of the charge within 24 hours of the incident or a hearing within three days of the alleged conduct; *Wolff* only required inmate to receive written notice of the charge 24 hours before a hearing); *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) ("Even if this regulation was violated, Lang cannot show that his right to due process was violated at either hearing, especially where *Wolff* does not require issuance of the charge within 24 hours of the incident. *Wolff* only requires that an inmate receive written notice of the charges 24 hours before a hearing."); *Kincer v. Winn*, 2014 WL 4259469, *2 (D. Ariz. Aug 29, 2014) (refusing to expunge disciplinary conviction where inmate allegedly did not receive notice within 24 hours); *Nerlich v. Quintana*, 2013 WL 875909, *5 (E.D. Ky. Mar. 7,

2013) (even assuming that the regulation "required delivery of an incident report within 24 hours in all instances, the Constitution does not, and thus a failure to adhere to the regulation does not create a claim of constitutional dimension"); *Rosa v. Grondolsky*, 2013 WL 3491077, *7 (D. Mass. July 9, 2013) ("While the Supreme Court has held that procedural due process requires that an inmate be given at least 24 hours to prepare for his or her hearing on a disciplinary charge, there is no constitutional requirement that a prisoner be given notice within 24 hours of the staff believing that a prisoner may be charged in the future with a disciplinary infraction.") (citations omitted); *Hughes v. Quintana*, 2013 WL 5350668, *3 (C.D. Cal. Sep 23, 2013) (same); *Robles v. English*, 2013 WL 3797594, *6 (N.D. Fla. July 19, 2013) ("Petitioner failed to show that the . . . failure to comply with time deadlines set forth in the federal regulations and BOP Program Statements entitle him to relief. . . .  Even though Petitioner may have received the incident report three months after staff became aware of his involvement . . . [he] received notice of the charge and hearing at least 24 hours prior to the hearing, which is all that is required to satisfy due process concerns."); *Riley v. Drew*, 2013 WL 2285941, *5 (D.S.C. May 23, 2013) (same).

Thus, because the Constitution does not require 24 hour notice of an incident report, even in relation to the deprivation of a protected liberty interest, Mr. Buhl does not state a violation of his due process rights.

In his Reply, Mr. Buhl argues that he has a liberty interest in avoiding confinement in the ADX facility where he is located and that his disciplinary conviction has precluded him from transfer from that facility for the last two and one-half years. Docket No. 22-1 at 2.  This claim has no merit.  The Court of Appeals for the Tenth

Circuit repeatedly has held that confinement in this facility does not constitute an aytpical and significant hardship that would qualify as a protected liberty interest under *Sandin*. *See Gowaldia v. Stearns*, 596 F. App'x 667 (10th Cir. 2014); *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012).

Moreover, even if it did, the same reasoning applies as stated above. In other words, even if Mr. Buhl could show that he had a protected liberty interest in avoiding confinement in the ADX, the Court would deny relief because the failure to provide notice of the charges within 24 hours did not violate his right to due process. In the instant case, it is apparent upon review of the record that Applicant was afforded each of the due process protections required by *Wolff* in connection with the disciplinary proceedings at issue. Specifically, he received the opportunity to appear before a DHO, he was provided with written notice of the charges against him, a copy of his rights and notice of his disciplinary hearing, which were delivered to him more than twenty-four hours notice before his hearing. Also, Petitioner was provided with the opportunity to call witnesses as well as his right to staff representation. Finally, Petitioner was provided with the DHO's report which provided a thorough written explanation of the DHO's decision, as well as the evidence relied upon and the rationale for the decision.

Moreover, the DHO's decision was supported by some evidence. The determination of whether that standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Under *Hill*, judicial review of a prison disciplinary decision is limited to ensuring

that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Id*. at 457.

Mr. Buhl's disciplinary conviction complied with the due process procedures mandated for the deprivation of a protected liberty interest. Accordingly, it is irrelevant whether his continued confinement in the ADX, which he asserts is based on this disciplinary conviction, constitutes a deprivation of a protected liberty interest. Mr. Buhl received all the due process protections required for the deprivation of a protected liberty interest. Therefore, he is not entitled to relief.

## IV. CONCLUSION

In summary, the Court finds that Mr. Buhl is not entitled to relief and the Application will be denied. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] is denied and this case is dismissed with prejudice.

DATED May 27, 2015.

                                          BY THE COURT:

                                          s/Philip A. Brimmer
                                          PHILIP A. BRIMMER
                                          United States District Judge